**BROTHERHOOD OF RAILWAY, AIRLINE AND STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES**

**v.**

**PHILADELPHIA, BETHLEHEM & NEW ENGLAND RAILROAD COMPANY.**

Civ. A. No. 85–1955.

United States District Court, E.D. Pennsylvania.

April 8, 1986.

John A. Edmond, Washington, D.C., J. Shane Creamer, Philadelphia, Pa., for plaintiff.

Alan D. Berkowitz, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

The above captioned action arises under the Railway Labor Act, 45 U.S.C. § 153, *et seq.* (RLA), and comes before the Court on cross-motions for summary judgment.

On June 15, 1983, the defendant Philadelphia, Bethlehem & New England Railroad Company (PB & NE) requested a meeting with a representative of the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees (BRAC) with respect to the railroad

proposals for a new collective bargaining agreement. Traditionally, these parties had based their agreements upon those of the steel industry and the United Steel Workers of America (USWA). Negotiations between PB & NE and USWA had culminated in a new agreement signed on June 10, 1983.

Pursuant to Section 6 of the RLA, 45 U.S.C. § 156,[1] the union responded with a request for a conference to discuss the railroad's proposed changes. The railroad responded with a counter Section 6 notice on July 16, 1983. Thereafter, between August 10 and August 16, the parties attempted to reach agreement upon a new contract but were unsuccessful. The parties met for the last time in an effort to break their impasse on August 23, 1983. At the conclusion of the August 23 meeting, PB & NE informed BRAC that it intended to effectuate the changes it had proposed in its July 16 notice unless the union requested mediation.

The union indicated that it intended to seek the services of the National Mediation Board (NMB) and supplemented its oral representation with a letter to the railroad which affirmed the union's position and indicated that the "process" had already begun. BRAC had ten (10) days to make a formal request for mediation to the Board. Its letter to PB & NE was dated September 1, 1983, within the ten-day period.

After ten more days had passed without notice from the Board that mediation had, in fact, been invoked, the railroad contacted the NMB and learned that no request for mediation services had been received from BRAC. Thereupon, the railroad notified BRAC that it was unilaterally implementing its final offer as of September 12, 1983, pursuant to the "self-help" provisions of the RLA. Two days later BRAC did make a formal request for mediation services, but the railroad refused to participate in mediation at that time, citing the untimeliness of the union's request therefor.

For more than a year, BRAC continued working under the collective bargaining agreement that the railroad had implemented. It then filed another Section 6 notice, seeking to reopen negotiations and, incidentally, begin another ten-day period in which to invoke mediation. The railroad responded in November, 1984, with a refusal to negotiate, stating that the agreement it had implemented placed a moratorium on negotiations under Section 6 until August 1, 1986. Thereafter, in April, 1985, the union brought this action seeking to return to the wages, rules and working conditions its members had enjoyed prior to September 12, 1983. BRAC also seeks restitution to the extent that the contract to which it has been subject since September, 1983, is less favorable than the prior agreement.

In support of its motion for summary judgment and the relief requested in the complaint, BRAC argues that the Court should look to the policies of negotiation and conciliation underlying the RLA. Presumably, this line of argument attempts to direct the Court's attention away from the union's failure to comply with the statutory period for invoking mediation within the time frame prescribed by Section 6. The attempt must fail.

---

1. § 156. Procedure in changing rates of pay, rules, and working conditions

Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice. In every case where such notice of intended change has been given, or confer-ences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, or said Board has proffered its services, rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon, as required by section 155 of this title, by the Mediation Board, unless a period of ten days has elapsed after termination of conferences without request for or proffer of the services of the Mediation Board. May 20, 1926, c. 347, § 6, 44 Stat. 582; June 21, 1934, c. 691, § 6, 48 Stat. 1197.

In *Iberia Airlines of Spain v. National Mediation Board, et al.*, 472 F.Supp. 104 (S.D.N.Y.1979), *aff'd.* 636 F.2d 1201 (2d Cir. 1980) *cert. denied,* 450 U.S. 999, 101 S.Ct. 1704, 68 L.Ed.2d 200 (1981), the district court was presented with an almost identical situation. There, the union filed a request for mediation prior to the employer's resort to self-help, but it was not received by the NMB until the ten-day statutory period had expired. A holiday and a major snowstorm had closed the Board's offices on two successive days, causing the delay which rendered the request untimely. Nevertheless, the court "reject[ed] the government's invitation to construe the Act [RLA] in clear derogation of its express statutory language". *Id.* at 109.

■ Although the plaintiff contends that the *Iberia Airlines* case was wrongly decided, its position found no support in the Court of Appeals for the Second Circuit, nor in the United States Supreme Court, both of which permitted the district court's decision to remain undisturbed. Similarly, this Court is obliged to reject the plaintiff's arguments. As defendant points out, BRAC's case is considerably weaker than that of the union in the *Iberia Airlines* case. Here, the plaintiff neither contends that it formally requested mediation services before September 14, 1983, nor offers any explanation for its tardiness. Instead, it attempts to convince the Court that the expression of its intention to invoke mediation should be deemed sufficient to comply with the statutory period set forth in Section 6. Not surprisingly, it can find no support for such a proposition beyond its argument that the "spirit" of the Act should take precedence over its express provisions. Consequently, for the reasons given in the *Iberia Airlines* case we conclude that the defendant's resort to self-help on September 12, 1983, was proper under the Railway Labor Act.

■ We next consider whether the railroad was justified in refusing to open negotiations after it received the union's second Section 6 notice in late 1984. The defendant supports its action by noting that its

September 12, 1983, letter notified BRAC of its intention to implement its final offer, contained in defendant's July 6 Section 6 notice. That offer, repeated in the September 12, 1983, letter, (Exhibit E to Defendant's Motion for Summary Judgment, Doc. # 3), has as its first point the adoption of the 1983 basic steel settlement. The agreement, in turn, includes Appendix K, which provides that the agreement "shall not terminate earlier than August 1, 1986". (Exhibit A to Defendant's Motion for Summary Judgment). Thus, it argues that plaintiff's November, 1984, Section 6 notice was ineffective because of the terms of the agreement it had implemented.

Plaintiff's arguments to the contrary rest on the same insecure basis as its position with respect to the railroad's resort to self-help in the first instance. BRAC does not dispute the defendant's contention that these parties had implemented the basic steel agreement for twenty years before the present dispute arose. Nevertheless, it now contends that because that agreement is subject to the National Labor Relations Act (NLRA) which contains no provision similar to Section 6 of the RLA, the Court should not permit the railroad to implement the moratorium on new negotiations along with the rest of the USWA/PB & NE contract. The union also contends that the moratorium provision was not part of the railroad's July 6, 1983, Section 6 notice. Since negotiations between these parties had traditionally been based upon the railroad's agreement with the USWA, and the Section 6 notice sent on July 6, 1983, and reincorporated into the September 12, 1983, letter, clearly referred to the "basic steel settlement", the basis for these arguments is unsound. Our conclusion that the railroad properly implemented its final offer includes all the terms thereof. It would vitiate the limitations period contained in Section 6 of the RLA just as completely as a contrary holding on the ten-day issue if we were to allow the union to reopen negotiations upon its issuance of a Section 6 notice *at any time*, without regard to the terms of the contract implemented by the

railroad. Thus, we conclude that the defendant is not required to begin negotiations on a new agreement until August 1, 1986, provided, of course, that the plaintiff then forwards to the defendant a Section 6 notice pursuant to the RLA.